**James Earl RAY, Petitioner,**

**v.**

**Mr. J. H. ROSE, Warden, Tennessee State Penitentiary, Respondent.**

**Civ. A. No. 6800.**

United States District Court,
M. D. Tennessee,
Nashville Division.

March 30, 1973.

Bernard Fensterwald, Jr., James H. Lesar, Washington, D. C., Robert I. Livingston, Memphis, Tenn., Stephen C. Small, Nashville, Tenn., for petitioner.

W. Henry Haile, Asst. Atty. Gen., State of Tenn., Nashville, Tenn., for respondent.

## MEMORANDUM

MORTON, District Judge.

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. While petitioner raises a myriad of issues in his massive pleadings, the central and determinative issue is whether petitioner, on March 10, 1969, voluntarily, knowingly, and intelligently entered a plea of guilty to the first degree murder of Dr. Martin Luther King, Jr. If petitioner did enter a voluntary, knowing and intelligent guilty plea while represented by competent counsel, then any and all non-jurisdictional defects raised by this petition were waived. United States v. Cox, 464 F.2d 937, 940 (6th Cir. 1972), citing cases; Henderson v. Tollett, 459 F.2d 237, 241 (6th Cir. 1972), cert. granted 409 U.S. 912, 93 S. Ct. 233, 34 L.Ed.2d 172 (1972).

The respondent, by his answer of December 27, 1972, has moved the court to dismiss the petition. In determining whether the petition should be dismissed without an evidentiary hearing, the court must of course treat all factual allegations properly pleaded as true. However, mere conclusory allegations without more are not sufficient to justify an evidentiary hearing to determine their truth or falsity. Matthews v. Wingo, 474 F.2d 1266 (6th Cir., decided March 1, 1973). "[V]ague, conclusory, or palpably incredible" allegations in a petition for writ of habeas corpus do not justify an evidentiary hearing.[1] Machibroda v. United States, 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962). Nor do "patently frivolous or false" allegations necessitate an evidentiary hearing. Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 119, 76 S.Ct. 223, 100 L.Ed. 126 (1956). See also McMann v. Richardson, 397 U.S. 759, 787, 90 S.Ct. 1441, 25 L.Ed.2d 763, Brennan, J., dissent (1970).

Dr. Martin Luther King, Jr. was fatally struck down by a rifle shot in Memphis, Tennessee, on April 4, 1968.[2] Petitioner James Earl Ray, with his assorted aliases, was indicted by the Grand Jury of Shelby County, Tennessee, for murder in the first degree on May 7, 1968. The indictment charged that petitioner "did unlawfully, feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought KILL and MURDER MARTIN LUTHER KING, JR." (See Exhibit filed March 20, 1973.) Petitioner was arrested at Heathrow Airport in London, England, on June 8, 1968. While still in London, petitioner wrote to and retained the services of Arthur Hanes, Sr., a member of the bar of the State of Alabama. After an extradition hearing, at which he was represented by an English court-appointed counsel, petitioner was returned to Memphis, Tennessee, and there placed in jail on July 19, 1968.

By letter dated November 10, 1968, petitioner discharged Arthur Hanes, Sr. as his attorney, citing "some disagreements between me and you in regards to

---

1. This petition is liberally spiced with factually unsupported conclusory allegations.

2. Petitioner asserts that "[t]he assassination of Dr. King was a political event." (Memorandum of Facts, p. 45)

the handling of my case . . . ." as the reason. (Exhibit 31 to Complaint) On November 12, 1968, Percy Foreman, a member of the Texas bar, was enrolled as the new attorney for the petitioner. On that date the trial court continued the case until March 3, 1969. On December 18, 1968, the late trial judge Preston Battle appointed the public defender, Hugh Stanton, Sr., a member of the Tennessee bar, to also represent the petitioner in the state criminal proceedings. The pleadings reflect that Hugh Stanton, Jr., a member of the bar of Tennessee, assisted attorneys Foreman and Stanton, Sr. in rendering legal assistance to the petitioner.

On March 10, 1969, a Petition For Waiver of Trial and Request for Acceptance of Plea of Guilty, signed by petitioner and by attorneys Percy Foreman, Hugh Stanton, Sr., and Hugh Stanton, Jr., was presented to the state trial court. This petition reads in its entirety:

"IN THE CRIMINAL COURT OF SHELBY COUNTY, TENNESSEE DIVISION III

STATE OF TENNESSEE

vs. NO. 16645

JAMES EARL RAY
DEFENDANT

"PETITION FOR WAIVER OF TRIAL AND REQUEST FOR ACCEPTANCE OF PLEA OF GUILTY

"That my true full name is JAMES EARL RAY and I assert that all proceedings against me should be had in the name which I hereby declare to be my true name.

"My attorney in the cause is PERCY FOREMAN, who was selected and retained by me, and Hugh Stanton, Sr., Public Defender, who was appointed by the Court to represent me in this cause.

"I have received a copy of the indictment before being called upon to plead, and I have read and discussed it with my attorney, and believe and feel that I understand the accusation made against me in this case and in each case listed herein. I hereby waive the formal reading of the indictment.

"I have told my attorney the facts and surrounding circumstances as known to me concerning the matters mentioned in the indictments, and believe and feel that my attorney is fully informed as to all such matters. My attorney has informed me at [sic] to the nature and cause of each accusation against me, and as to any and all possible defenses I might have in this cause.

"My attorney has advised me as to the punishment provided by law for the offenses charged and embraced in the indictment against me. My attorney has further advised that punishment which the law provides for the crime with which I am charged in the indictment is as follows:

death by electrocution or confinement in the State Penitentiary for life or for some period of time over twenty (20) years

and if accepted by the Court and Jury my sentence on a plea of guilty will be:

confinement in the State Penitentiary for ninety-nine years (99).

"It has been fully explained to me and I understand that I may, if I so choose, plead 'Not Guilty' to any offense charged against me, and that if I choose to plead 'Not Guilty' the Constitution guarantees and this Court will provide me the right to a speedy and public trial by jury; the right to see and hear all witnesses against me; the right to use the power and process of the Court to compel the production of any evidence, including the attendance of any witness, in my favor; and the right to have the assistance of counsel in my defense at all stages of the proceedings.

"In the exercise of my own free will and choice and without any threats or

pressure of any kind or promises of gain or favor from any source whatsoever, and being fully aware of the action I am taking, I do hereby in open Court request the Court to accept my plea of guilty to the charges outlined herein. I hereby waive any right I may or could have to a Motion for a New Trial, and/or an appeal.

/s/ James Earl Ray
Defendant

Witness:
/s/ Percy Foreman
/s/ Hugh Stanton, Sr.
/s/ Hugh Stanton, Jr."

The trial court then proceeded to hold a hearing on this Petition For Waiver of Trial and Request for Acceptance of Plea of Guilty. The portions of that hearing most material to petitioner's current assertion that he was unlawfully coerced into entering an involuntary plea of guilty to murder in the first degree are as follows:

"JAMES EARL RAY—GUILTY PLEA
MONDAY, MARCH 10, 1969

"THE COURT: The calendar has been transferred to Division I. Alright, I believe the only matter we have pending before us is the matter of James Earl Ray.

"MR. FOREMAN: Would your Honor give me just a minute?

"THE COURT: Yes, Sir.

"MR. FOREMAN: May it please the Court, in this cause, we have prepared the defendant and I have signed and Mr. Hugh Stanton, Sr. and Jr. will now sign a Petition for Waiver of Trial and Request for Acceptance of Plea of Guilty. We have an order, I believe the Clerk has this.

"THE COURT: This is a compromise and settlement on a plea of guilty to murder in the first degree and an agreed settlement of 99 years in the Penitentiary, is that true?

"MR. FOREMAN: That's the agreement, your Honor.

"THE COURT: Is that the agreement? Alright, I'll have to voir dire Mr. Ray, James Earl Ray, stand. Have you a lawyer to explain all your rights to you and do you understand them?

"A Yes, Sir.

"THE COURT: Do you know that you have a right to a trial by jury on a charge of Murder in the First Degree against you, the punishment for Murder in the First Degree ranging from death by electrocution to any time over 20 years. The burden of proof is on the State of Tennessee to prove you guilty beyond a reasonable doubt and to a moral certainty and the decision of the jury must be unanimous, both as to guilt and punishment. In the event of a jury verdict against you, you would have the right to file a Motion for a New Trial addressed to the Trial Judge. In the event of an adverse ruling against you on your Motion for a New Trial, you would have the right to successive appeals to the Tennessee Court of Criminal Appeals and the Supreme Court of Tennessee and to file a Petition for Review by the Supreme Court of the United States. Do you understand that you have all of these rights?

"A Yes, Sir.

"THE COURT: You are entering a plea of guilty to Murder in the First Degree as charged in the indictment and are compromising and settling your case on an agreed punishment of 99 years in the State Penitentiary. Is this what you want to do?

"A Yes, I do.

"THE COURT: Is this what you want to do?

"A Yes, Sir.

"THE COURT: Do you understand that you are waiving, which means giving up a formal trial by your plea of guilty although the laws of this State require the prosecution to present certain evidence to a jury in

**692**

all cases on pleas of guilty to Murder in the First Degree? By your plea of guilty, you are also waiving your right to one, your Motion for a New Trial; two, successive appeals to the Supreme Court, to the Tennessee Court of Criminal Appeals and the Supreme Court of Tennessee and three, Petition to Review by the Supreme Court of the United States. By your plea of guilty, you are also abandoning and waiving your objections and exceptions to all the motions and petitions in which the Court has heretofore ruled against you in whole or in part among them being one, Motion to Withdraw Plea and Quash Indictment; two, Motion to Inspect the Evidence; three, Motion to Remove Lights and Cameras from the Jail; four, Motion for Private Consultation with Attorney; five, Petition to Authorize Defendant to Take Depositions; six, Motion to Permit Conference with Huie; seven, Motion to Permit Photographs; eight, Motion to Designate Court Reporters; nine, Motion to Stipulate Testimony, ten, Suggestion of Proper Name. You are waiving or giving up all these rights. Has anything besides this sentence of 99 years in the Penitentiary been promised to you to get you to plead guilty? Has anything else been promised to you by anyone?

"A No, it has not.

"THE COURT: Has any pressure of any kind by anyone in any way been used on you to get you to plead guilty?

"A No, No one, in any way.

"THE COURT: Are you pleading guilty to Murder in the First Degree in this case because you killed Dr. Martin Luther King under such circumstances that it would make you legally guilty of Murder in the First Degree under the law as explained to you by your lawyers?

"A Yes, legally, yes.

"THE COURT: Is this plea of guilty to Murder in the First Degree with an agreed punishment of 99 years in the State Penitentiary freely, voluntarily and understandingly made and entered by you?

"A Yes, Sir.

"THE COURT: Is this plea of guilty on your part the free act of your free will made with your full knowledge and understanding of its meaning and consequences?

"A Yes, Sir.

"THE COURT: You may be seated. Alright, are you ready for a jury?

"MR. FOREMAN: Yes, your Honor.
 * * * * * *
"JAMES EARL RAY: Your Honor, I would like to say something. I don't want to change anything that I have said, but I just want to enter one other thing. The only thing that I have to say is that I can't agree with Mr. Clark.

"MR. FOREMAN: Ramsey Clark.

"THE COURT: Mr. who?

"JAMES EARL RAY: Mr. J. Edgar Hoover, I agree with all these stipulations, and I am not trying to change anything.

"THE COURT: You don't agree with whose theories?

"JAMES EARL RAY: Mr. Canale's, Mr. Clark's, and Mr. J. Edgar Hoover's about the conspiracy. I don't want to add something on that I haven't agreed to in the past.

"MR. FOREMAN: I think, that what he said is that he doesn't agree that Ramsey Clark is right, or that J. Edgar Hoover is right. I didn't argue that as evidence in this case, I simply stated that under riding the statement of General Canale that they had made the same statement. You are not required to agree with it all.

"THE COURT: You still, your answers to these questions that I asked you would still be the same? Is that correct?

"JAMES EARL RAY: Yes, Sir.

"THE COURT: There is nothing in these questions that I have asked you and your answers to them, you change none of them at all. In other words, you are pleading guilty to, and taking 99 years, I think the main question that I want to ask you is this: are you pleading guilty to Murder in the First Degree in this case because you killed Dr. Martin Luther King under such circumstances that it would make you legally guilty of Murder in the First Degree under the law as explained to you by your lawyer. Your answer is still yes? Alright, Sir, that is all, you may swear the jury." (Exhibit 5 to Answer, pp. 1–5, 16–18.)

The trial court on the same date entered a written "Order Authorizing Waiver of Trial and Accepting Plea of Guilty," (Exhibit 6 to Answer, pp. 18, 19). In this order the trial court found inter alia that the defendant Ray,

". . . intelligently and understandingly waives his right to a trial and of his own free will and choice and without any threats or pressure of any kind or promises, other than the recommendation of the State as to punishment; and does desire to enter a plea of guilty and accept the recommendation of the State as to punishment, waives his right to a Motion for a New Trial and/or an appeal." (Exhibit 6 to Answer, p. 19)

The trial court also approved the petitioner's entry of a plea of guilty in return for a sentence of 99 years. The State then introduced strong evidence indicating that on April 4, 1968, petitioner fired a rifle from a rooming house bathroom and fatally wounded Dr. Martin Luther King, Jr. as he stood on the balcony of the Lorraine Motel. The jury accepted the plea of guilty and the sentence of 99 years, and the court so entered the judgment.

The record of the March 10, 1969, proceedings in the Criminal Court of Shelby County affirmatively reflects that petitioner voluntarily, knowingly, and intelligently pleaded guilty to murder in the first degree. The record also affirmatively reflects that petitioner had a full understanding of the connotation of his plea of guilty and its consequences. *See* Boykin v. Alabama, 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The record of these state criminal court proceedings indicates that the plea represented "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970).

It appears to the court that the specific central and determinative issue raised by the massive pleadings in this case is this: Were illicit pressures placed upon the petitioner to such an extent that he did not voluntarily enter the plea of guilty?[3] The record of the state criminal proceedings of March 10, 1969, is certainly relevant on this issue; however, it is not conclusive. The court must consider all the relevant circumstances, both individually and collectively, surrounding the entry of the plea of guilty in determining the issue of voluntariness. Brady v. United States, 397

---

3. Petitioner does not factually contend that he did not fully understand the acts which constituted the crime of which he was charged. Nor does petitioner assert that he was not fully advised as to what constitutes the crime of murder in the first degree in Tennessee under T.C.A. § 39–2402. Further, petitioner does not assert that he was not fully aware of the consequences of his plea of guilty.

While petitioner does now maintain that he is innocent of the shooting of Dr. King, it is the law that a criminal defendant may enter a valid plea of guilty while refusing to admit his participation in the acts constituting the crime. North Carolina v. Alford, *supra.* In any case, at the hearing on his plea of guilty, petitioner did admit in open court that he killed Dr. King. In considering this petition for writ of habeas corpus, this court is not concerned, of course, with guilt or innocence, but with whether constitutional rights were violated as alleged.

U.S. 742, 749, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ; Kennedy v. United States, 397 F.2d 16 (6th Cir. 1968).

To support his contention that he was coerced into an involuntary plea of guilty, petitioner makes the following allegations:

1. Exculpatory evidence was withheld from petitioner by the British and American governments and the State of Tennessee.

2. Cruel and unusual punishment was inflicted upon petitioner during his incarceration prior to trial, vitiating his capacity to freely and voluntarily enter a plea.

3. Irreconcilable conflicts of interest on the part of petitioner's attorneys engendered enormous prejudicial publicity and caused his attorneys to pressure him not to take the witness stand in his own defense and instead to enter a plea of guilty against his will.

4. Petitioner's attorney entered into direct negotiation of the guilty plea with the trial judge.

5. By means of duress and bribery, petitioner's attorney coerced him into pleading guilty.

6. Petitioner's only alternative to the pressures upon him and the conflicts of interest which denied him the right to effective assistance of counsel was foreclosed because the trial judge denied him the right to change attorneys.

A plea of guilty, which involves a waiver of various constitutional rights, must "be the voluntary expression of his own choice." Brady v. United States, *supra,* 397 U.S. at 748, 90 S.Ct. at 1469. But for a plea of guilty to be valid, more than voluntariness is required. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id.*

The court will consider each of the allegations individually, and then collectively as to the issue of the validity of the plea.

■ Petitioner's first allegation that exculpatory evidence was withheld from him is patently frivolous. Petitioner does not cite to the court any evidence withheld which "would tend to exculpate him or reduce the penalty." Brady v. Maryland, 373 U.S. 83, 87, 88, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). Nowhere in the pleadings, neither in the petition, any memoranda, exhibits, nor in the traverse, does the court find a factual allegation that the authorities withheld any evidence that would be favorable to petitioner and material either to guilt or punishment. *Id.,* at 87, 83 S.Ct. 1194.

■ Petitioner's second allegation that the conditions of his confinement in the jail in Memphis vitiated his capacity to freely and voluntarily enter a plea is merely conclusory and not supported by sufficient factual allegations.[4] Petitioner alleges no facts that would be sufficient to justify a finding by this court that his mental, emotional or physical condition deteriorated to such an extent that he was unable to voluntarily, knowingly, and intelligently enter a plea. There are no factual allegations that petitioner's mental, emotional or physical condition deteriorated to the extent that it "vitiated his ability to resist the improper pressures . . . ." (Petition, p. 15) The court considers a bare allegation that petitioner "became extremely nervous and suffered from chronic headaches and nosebleeds" (Petition, p. 16) to be insufficient. Taking this bare allegation as true, the court finds that, standing alone, it would not render his plea involuntary. There is no allegation that petitioner was denied adequate medical care. Nor does petitioner present to the court any factual medical basis for his alleged deteriorated condition. Further, it appears to the court that had the case proceeded to trial, petitioner's stay in the Memphis

4. Petitioner filed a motion to remove lights and cameras from the jail which was denied by the state trial judge. (See Exhibit 5 to Answer, p. 4)

jail would have been only a few days more than was apparently the case with the plea of guilty. Thus, the court doubts that petitioner was motivated to plead guilty so that he would be moved from the strict security of the Memphis jail.

■ Petitioner contends in his third allegation that the various contracts and agreements which contemplated the supplying of information by Ray to Huie resulted in damaging prejudicial publicity. Petitioner contends that the publicity generated by these contracts and agreements, together with publicity from other sources, had the effect of denying him his due process rights to a fair trial before a fair and impartial jury. Thus, petitioner apparently contends that as he had already been convicted by the press he was consequently coerced into pleading guilty and negotiating a sentence. This allegation is not sufficiently supported by factual allegations. There are no particularized allegations as to how the publicity rendered his plea involuntary. Petitioner filed various exhibits indicating that he was the subject of widespread publicity and then expresses his conclusion that a fair trial would have been denied him. The court finds that the factual allegations, including the exhibits filed by petitioner, are insufficient to justify such a conclusion. Petitioner presents no factually supported allegation that a fair and impartial jury could not have been impaneled to hear his case. Nor does petitioner present factual allegations which, taken as true, would be sufficient to justify a finding that the trial judge could not or would not have conducted a fair trial in accordance with standards of due process under the Fourteenth Amendment.

Further, petitioner willingly provided much of the information that William Bradford Huie used as the basis for articles in *Look Magazine*. He was fully aware that Huie intended to use the materials supplied by Ray in his writings. As to the use of that information, the court doubts that Ray can now complain of its use by Huie in the *Look Magazine* articles.

But taking into account all of the articles and publicity exhibited to the court by petitioner, this court cannot find that the publicity was so prejudicial as to render a fair trial unlikely or impossible. More specifically, the court cannot conclude from the factual allegations, including the exhibits, that the publicity coerced petitioner into entering an involuntary plea of guilty.

■ The court will now take up the conflict of interest allegations under his third contention along with the duress and bribery allegations of the fifth contention. While it may be true that "the attorney-client contracts involved here were pregnant with a potential conflict of interest" [Ray v. Foreman, 441 F.2d 1266, 1270 (6th Cir. 1971), Judge Miller, dissenting], the court does not feel that such a conflict of interest, without more, would vitiate an otherwise voluntary guilty plea made in reliance upon the advice of his privately retained attorney and his court-appointed attorney. *See* Dukes v. Warden, 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972). It appears to the court that an attorney, subject to a conflict of interest arising from a fee arrangement with his client, can nevertheless render effective representation. Disregarding the factually unsupported allegations,[5] it appears to the court that the essence of these allegations is that petitioner's privately retained attorney,

---

5. Petitioner asserts and concludes as follows: "Under Foreman's relentless pressure for a guilty plea, Ray's resistance to it was worn down. Ray finally came to believe and with abundant reason, that Foreman did not want to go to trial, was unprepared to go to trial, and, if forced to go to trial, would deliberately destroy Ray in the courtroom.

\* \* \* \* \*

"When Ray came to believe this, he agreed to enter a plea of guilty." (Memorandum of Facts, p. 43, referring to Exhibit 3 of Petition, pp. 10, 11.)

Mr. Foreman, wrongfully coerced his plea by giving him bad legal advice.

Petitioner claims that certain contracts and royalty agreements between this privately retained attorney, himself, and author William Bradford Huie created a conflict of interest which induced his attorney to coerce the petitioner into his plea of guilty. Petitioner theorizes that the contracts and agreements would decline in value considerably if the true story of the murder and of his activities were told at a trial. If he were found innocent at the trial, his theory goes, the public would have little interest in reading about a man who did not murder Dr. King. Attorney Foreman is charged with pressuring petitioner into his plea by advising him that there was a 100 per cent chance of a guilty verdict, and a 99 per cent chance that he would receive the death penalty from a Shelby County jury. (Memorandum of Facts, p. 36, referring to Exhibit 14-A of Petition.)

■■ Based on the overwhelming evidence against petitioner that the state purportedly possessed, considered in light of the then applicable death penalty under T.C.A. § 39–2405, the strongest urgings of counsel that petitioner plead guilty in return for a sentence less severe than death should not be deemed unwise or unsound. But assuming some bad advice or error in judgment by his retained counsel, or his court-appointed counsel, and no factual allegations exist in petitioner's pleadings to support this assumption, this alone would not render his plea of guilty invalid.

A defendant, when pleading guilty, ". . . assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." McMann v. Richardson, 397 U.S. 759, 774, 90 S.Ct. 1441, 1450, 25 L.Ed.2d 763 (1970); *see also* Parker v. North Carolina, 397 U.S. 790, 797, 90 S.Ct. 1458, 25 L.Ed. 2d 785 (1970).

The factual allegations in petitioner's pleadings are insufficient to demonstrate any such "serious derelictions" or "gross error on the part of counsel when he recommended that the defendant plead guilty." McMann v. Richardson, *supra*, 397 U.S. at 772, 90 S.Ct. at 1449.

■ The petitioner is not entitled to withdraw a plea of guilty made in reliance upon mere bad advice of counsel even though he claims that had he been correctly counseled he would have gone to trial. Parker v. North Carolina, *supra*, 397 U.S. at 797, 90 S.Ct. 1458.

■ "A plea of guilty is not invalid merely because entered to avoid the possibility of the death penalty." Brady v. United States, *supra*, 397 U.S. at 755, 90 S.Ct. at 1472.[6]

■ It is quite likely that petitioner would not have entered the plea of guilty in return for a sentence of 99 years had he or his attorneys foreseen the subsequent voiding of the death penalty. A sentence of 99 years is presently the most severe penalty that can be exacted for the crime of first degree murder in the State of Tennessee. However, "absent misrepresentation or other impermissible conduct by state agents, . . . a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Id.* at 757, 90 S.Ct. at 1473.

■ In determining the issues relating to claims of denial of effective assistance of counsel, and to the voluntari-

6. The court is, of course, aware that the petitioner does not specifically contend that his plea of guilty was involuntarily made so as to avoid the possibility that a jury might impose the death penalty.

ness of the guilty plea, the court must do so in light of the law applicable at the time of the representation and criminal proceedings. T.C.A. § 39–2405 provides as the penalty for murder in the first degree either death, imprisonment in the state penitentiary for life, or for some period over 20 years, as the jury may determine. Of course, before and at the time petitioner pleaded guilty, this death penalty had not as yet been effectively voided by the United States Supreme Court's interpretation of the Federal Constitution in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346 (1972).

■ Assuming as true all factual allegations in petitioner's pleadings, the court finds that the advice given to petitioner by his privately retained counsel "was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, *supra*, 397 U.S. at 771, 90 S.Ct. at 1449. The court can find no illicit coercion from the factual allegations, only reasonably competent advice and assistance.

■ Petitioner, in his sixth allegation, asserts that the trial judge denied him the right to discharge his privately retained attorney. He concludes that, therefore, he had no escape from the alleged illicit coercion of his privately retained counsel. Of course, the court fails to find a sufficient factual allegation of illicit coercion. In any case, the trial court did not deny petitioner the right to discharge his privately retained counsel. The trial court did admonish petitioner that while he had "a right at any time to dispose of counsel," he must use "due diligence in procuring counsel" and must not discharge his attorney as a "delaying tactic." [7] The trial judge went on to inform petitioner that "[t]he case must be tried on the next setting unless legal grounds for continuance exist." (Exhibit 18 to Petition)

The substance of the statements of the trial judge on November 12, 1968, was that while petitioner had a right to discharge his privately retained counsel, he could not do so as a "delaying tactic" in an effort to secure another continuance. Petitioner, if he had become dissatisfied with the representation of Mr. Foreman, had the right to discharge his counsel within the above-stated confines. Further, petitioner had the benefit of the Public Defender's Office after December 18, 1968. There is absolutely no factual allegation to indicate that the public defender did not or could not effectively represent the petitioner.

The court cannot agree with petitioner's conclusory allegation that the trial judge improperly foreclosed his right to privately retain counsel. As far as the record shows, petitioner could have discharged Mr. Foreman at any time before trial, retained no other attorney, and still have had the effective assistance of the Public Defender's Office.

■ Petitioner's fourth allegation that his privately retained attorney's alleged plea negotiations directly with the trial judge violated his rights to due process and tended to coerce his plea of guilty is factually unsupported and vague. Further, it appears to the court to be palpably frivolous.

■ The court does not agree with another contention of petitioner that the trial judge failed to adequately inquire into the factual basis of the plea and neglected to determine whether petitioner understood the nature of the charge against him. The record of the March 10, 1969, proceedings, considered alone, affirmatively reflects the constitutionally required voluntary, knowing and intelligent plea of guilty. The trial judge inquired as to whether the petitioner killed Dr. King under circumstances that make him guilty of murder in the first degree. Petitioner responded affirmatively. The trial judge carefully explained to petitioner the consequences of his plea, including the rights that he would thereby waive. The trial judge

---

7. This admonishment was delivered in response to petitioner's motion for continuance and for change of counsel, both of which the trial court granted. Petitioner does not contend that this admonishment was not legally proper and a correct statement of law.

explained to petitioner his legal rights if he decided to go to trial. The petitioner, in response to questions from the trial judge, stated that no pressures of any kind had been placed upon him to get him to plead guilty, and that nothing had been promised him other than a 99-year sentence. Petitioner stated that he had been advised of all of his rights by his attorneys and that he understood his rights. In response to questions from the trial judge, the petitioner answered affirmatively that he was entering his plea voluntarily, knowingly, and with full knowledge and understanding of its meaning and consequences. (See Exhibit 5 to Answer, pp. 1–18)

While this court doubts that the Constitution requires the trial judge to always inquire as to whether the plea had a factual basis,[8] the court finds that the inquiry of the trial judge was a sufficient inquiry into the factual basis of the plea. The trial judge asked petitioner if he killed Dr. King and the petitioner responded affirmatively. The response of petitioner is in effect a statement that he committed the act which was the factual basis of the charge of murder in the first degree.

The record of the March 10, 1969, proceedings, considered alone, shows that the petitioner entered a voluntary, knowing and intelligent plea of guilty.

Considering the alleged coercive influences both individually and collectively, the court finds that petitioner has presented no factual allegations which, taken as true, justify a conclusion that he did not enter a voluntary, knowing and intelligent plea of guilty to murder in the first degree. Accordingly, the court must hold that petitioner waived all nonjurisdictional defects. Petitioner was convicted and sentenced on the basis of his plea and not as a result of any nonjurisdictional defects. *See* Reed v. Henderson, 385 F.2d 995 (6th Cir. 1967). While the court considers as waived all defects raised in his petition other than the validity of his plea, the court will nevertheless consider the allegation of ineffective assistance of counsel.

Petitioner stated conclusions to the effect that his privately retained attorney and the Public Defender's Office failed to adequately investigate the case, failed to file the proper motions with the court, and, due to a conflict of interest arising from contractual fee arrangements, his privately retained attorney, Mr. Foreman, pressured the petitioner into his plea. However, "[i]f a criminal defendant is to prevail on an allegation of ineffective assistance of counsel he must demonstrate that what was done or not done by his attorney made his defense a farce and mockery of justice that would be shocking to the conscience of the court." Matthews v. Wingo, *supra*, 474 F.2d at 1268. Petitioner has not factually alleged anything to indicate that his defense was "a farce and mockery of justice that would be shocking to the conscience of the court."[9]

Petitioner's conclusory allegation that assistance of counsel was rendered ineffective by reason of constant surveillance is factually unsupported. (Petition, pp. 10, 11) There are no factual allegations that the prosecution eavesdropped on conversations between petitioner and his attorneys. Petitioner does not factually allege that the prosecution planted agents so as to interfere in any way with the right of petitioner and his attorneys to prepare a defense in secret. Nor does petitioner factually allege that jail guards listened to any particular private conversations between

---

8. *See* North Carolina v. Alford, *supra*, in which the Supreme Court ruled that a defendant may enter a valid plea of guilty while refusing to admit his participation in the acts constituting the crime.

9. Petitioner admits that the Public Defender's Office had interviewed some 25 witnesses as of March 4, 1969. (Memorandum of Facts, p. 33) Further, petitioner was the beneficiary of a liberal discovery ruling by the trial judge on a motion of Arthur Hanes, Sr. (Exhibit 2 to the Answer)

him and his attorneys. There are no factual allegations that anyone informed the prosecution of the consultations between him and his attorneys. The conclusory allegation that guards overheard private communications with his attorneys, and that therefore, effective assistance of counsel was denied to petitioner, is insufficient and not factually supported. In short, petitioner fails to factually allege that he and his attorneys were unable at any time to confer and prepare the defense in secret.

To summarize this order, the factual allegations of petitioner taken as true are insufficient to justify a holding that petitioner's plea was not voluntary, knowing and intelligent. Further, the factual allegations are insufficient to justify a holding that petitioner was denied any federal constitutional right leading up to his plea. In any case, his plea being a voluntary, knowing and intelligent one, petitioner waived all the alleged nonjurisdictional defects.

 Accordingly, this petition for writ of habeas corpus is hereby denied and dismissed. No evidentiary hearing is justified by the pleadings of petitioner.